# EXHIBIT A

**WHITE AND WILLIAMS LLP**
BY:   Robert G. Devine
     Katrina D. Gibson
LibertyView
457 Haddonfield Road, Suite 400
Cherry Hill, NJ  08002-2220
856.317.3600
Attorneys for Plaintiffs,
Byron and Kevin Huart



| | | |
|---|---|---|
| BYRON HUART and KEVIN HUART, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION - ESSEX COUNTY |
| Plaintiffs, | : | |
| | : | DOCKET NO.: |
| v. | : | |
| | : | CIVIL ACTION |
| THE GREAT ATLANTIC & PACIFIC TEA | : | |
| COMPANY, A&P, TONY ALIBRANDO, | : | **AMENDED COMPLAINT** |
| JOHN BINCOLETTO, JOHN DOES 1-15 | : | |
| (fictitious entities), and XYZ | : | |
| CORPORATIONS 1-5 (fictitious entities), | : | |
| | : | |
| Defendants. | : | |

Plaintiffs Byron Huart and Kevin Huart, by way of Complaint against defendants The

Great Atlantic & Pacific Tea Company, A&P, Tony Alibrando, John Bincoletto, John Does 1-15,

and XYZ Corporations 1-5, aver as follows:

<u>COMPLAINT</u>

<u>Parties:</u>

    1.    Plaintiff Byron Huart ("Byron") and his father, plaintiff Kevin Huart ("Kevin"),

are individual persons who are African-American and reside at 17 Howe Avenue, Montclair,

New Jersey 07042.

    2.    Plaintiff Byron suffers from, and/or is regarded as suffering from, a  permanent

developmental disability called or like Autism, a disorder of neural development  (hereafter

6806213v.1

referred to as "disability").  This disability is manifested in Byron by, among others, impaired communication and social interaction.

3.      Defendant The Great Atlantic & Pacific Tea Company, Inc. ("Great Atlantic") is a corporation located at 2 Paragon Drive, Montvale, New Jersey 07645.

4.      According to its website, Great Atlantic has approximately 48,000 employees and operates approximately 429 stores under various "Retail Banners," one of which is "A&P," a supermarket grocery store.

5.      Great Atlantic, according to its website, operates approximately 110 A&P stores, one of which is located at 510 Valley Road, Montclair, New Jersey 07043.  Hereafter, Great Atlantic and the A&P located at 510 Valley Road in Montclair, New Jersey are individually and/or collectively referred to as "A&P."

6.      Defendant "John," whose last name, upon information and belief, is Bincoletto, is an individual who was employed by A&P and a supervisor and/or manager of plaintiff Byron at times relevant to this litigation.

7.      Defendant Tony Alibrando is an individual who was employed by A&P and a supervisor and/or manager of plaintiff Byron at times relevant to this litigation.

8.      Defendants John Does 1-5 are individual employees, agents, representatives, and/or servants of A&P and/or any other operation of Great Atlantic, who took part in the discriminatory acts complained of in this complaint, but whose identities are presently unknown.

9.      Defendant John Doe 6 is the individual who performed security, safety and/or loss prevention services for A&P and/or who participated in the aforementioned interrogation, detainment, investigation, and/or search of plaintiff Byron, and/or  participated in the other

6806213v.1

discriminatory acts complained of in this complaint related to the interrogation, detainment, investigation, and/or search of plaintiff Byron.  The identity of John Doe 6 is presently unknown.

10.     Defendant John Does 7-10 are individuals who performed and/or were responsible for the security, safety and/or loss prevention services for A&P, and/or were responsible for the interrogation, detainment, investigation, and/or search of plaintiff Byron complained of in this complaint, and/or participated in the other discriminatory acts complained of in this complaint related to said interrogation, detainment, investigation, and/or search.  The identity of John Does 7-10 are presently unknown.

11.     Defendant John Does 11-15 are individuals who performed and/or were responsible for the security, safety and/or loss prevention services for A&P, and/or were responsible for the interrogation, detainment, investigation, and/or search of plaintiff Kevin complained of in this complaint, and/or participated in the other discriminatory acts complained of in this complaint related to said interrogation, detainment, investigation, and/or search.  The identities of John Does 11-15 are presently unknown.

12.     Defendant XYZ Corporations 1-5 are business entities who hired, employed, retained and/or are otherwise responsible for the safety, security and/or loss prevention services provided by John Does 6-15 that are the subject of this complaint.  The identities of XYZ Corporations 1-5 are presently unknown.

**Background Facts:**

13.     Byron was a minor employed part-time by A&P as a cashier from approximately April 2006 to on or about October 24, 2007, the date he was terminated from employment.

14.     Approximately 8-9 months prior to Byron's termination, a new team of managers were hired at the A&P, which included the hiring of Bincoletto and Alibrando.

-3-

15.     During this period, the employees and managers of the A&P repeatedly ridiculed, mocked, and/or made light of Byron's disability, and made offensive comments about his race.

16.     For example, one day after the completion of his workshift, Byron had changed into sandals.  Bincoletto looked at Byron's feet and told him they looked "horrific."  When Byron asked him what he meant by such comment, Bincoletto replied that they were "ashy," in reference to the ashen color of the bottom of Byron's feet.  Such comment was offensive and attributable to Byron's race and/or color.

17.     The aforementioned comments by Bincoletto were made in the presence of another employee, who laughed with Bincoletto.

18.     In addition, Bincoletto repeatedly called Byron "genius," and such remark was sarcastic and attributable to his race, color, disability and/or request for accommodation.

19.     On numerous occasions, Bincoletto, Alibrando and a female night manager, identity unknown, told Byron to "speed it up"—comments that were never made to other store cashiers, were offensive, and were attributable to his race, color and/or disability.

20.     On at least one occasion, a female night manager was mean to Byron and mocked his disability when Byron was closing out his register.  Specifically, she yelled to him in a nasty voice, "hey slow poke, speed it up...we're trying to get out of here!"

21.     On multiple occasions, A&P, Bincoletto, Alibrando, and/or John Does 1-5 ordered Byron to perform janitorial work, such as clean rat and mouse droppings in the rear of the store, empty trash containers, and take trash outside to the dumpster.

22.     None of the other cashiers were required to perform the aforementioned janitorial work, and upon information and belief, Byron was required to perform such work because of his race, color and/or disability.

6806213v.1

23.     Bincoletto laughed and/or smirked at Byron when Byron was cleaning up the rat and mouse droppings.

24.     On multiple occasions, Byron was required to collect shopping carts, which was not part of Byron's job description as a cashier and there were A&P employees whose sole job duty was to collect such carts.  Upon information and belief, Byron was required to perform this task because of his race, color, and/or disability.

25.     On at least one occasion when Byron was collecting the shopping carts, Bincoletto and another employee grinned, made fun of and laughed at the manner in which Byron collected the carts.

26.     Some of Byron's co-workers were mean to him, treated him as though he were ignorant, and/or ridiculed him.  For example, there was an employee who worked at customer service who was hostile to him, would speak to him in condescending manners, and told him to "fuck off" or "buzz off."

**Discharge of Byron:**

27.     Approximately one week prior to Byron's discharge, Byron learned that A&P was hiring for the position of front-end manager.  At that time, Byron requested that A&P place him on the training list for said position.

28.     On or around October 29, 2007, an African-American woman, identity unknown, checked out and purchased her groceries at the cashier at which Byron had been stationed (hereafter referred to as the "coupon lady").

29.     The coupon lady submitted coupons to Byron for her groceries and Byron scanned them under the "U-Scan," a machine designed and used to read the coupons and

determine whether they are valid.  The U-Scan machine redeemed said coupons and did not notify Byron that some or all of them were allegedly invalid.

30.     Shortly thereafter, defendant John Bincoletto, the A&P store manager at that time, approached Byron and accused him of participating in a "coupon conspiracy" with the coupon lady to steal money from the store.

31.     The basis of Bincoletto's claim was that Byron had purposefully redeemed coupons for the coupon lady that were invalid, despite the fact that the U-Scan machine failed to recognize that said coupons were invalid.

32.     According to Bincoletto, such conduct was in violation of A&P's "coupon control policy" and was part of Byron's conspiracy with the coupon lady to steal money from A&P.

33.     In the 1.5 years Byron had worked at the A&P, he had never been informed of the alleged "coupon control policy" and/or that he was not permitted to redeem coupons under said circumstances.

34.     Approximately two days later, on or about October 22, 2007, Byron was brought into a private room of the A&P by Bincoletto and John Doe 6, a company detective, to interrogate him about the alleged "coupon conspiracy" (hereafter referred to as the "interrogation").

35.     Byron was not permitted to leave during the aforementioned interrogation, which lasted approximately one and a half hours.

36.     Byron denied any intentional wrongdoing or any participation in any alleged conspiracy.

6806213v.1

37.     During said interrogation, defendants harassed, threatened, and/or intimidated Byron, and pressured him to sign an agreement admitting that he committed a wrong and that such wrong was intentional, despite Byron's repeated denials of any intentional wrongdoing.

38.     During the interrogation, Bincoletto scoffed and laughed at Byron.

39.     During the interrogation, the company detective, John Doe 6, told Byron that he could be taken to court and "hanged" for his conduct and/or if he did not sign an agreement admitting intentional wrongdoing.  John Doe 6's "hanging" comment was an offensive remark related to Byron's race and/or color.

40.     Defendant Bincoletto laughed at Byron when the company detective, John Doe 6, made said "hanging" comment.

41.     Prior to the coupon lady incident, Byron had made repeated requests to management for training on different company procedures, including training on the U-Scan, the machine that processed coupons.

42.     A&P, Bincoletto, Alibrando, and/or John Does 1-6 denied all of said requests by Byron for training, and did not provide Byron with any reason for such denials.

43.     When Byron asked Bincoletto the reason for said denials, Bincoletto would roll his eyes, laugh at him, and respond, "it's just one of those things."

44.     On multiple occasions, Byron asked a front-end manager named Justine, identity otherwise unknown, for U-Scan training.  In response to his requests, she would either ignore him, laugh at him, or respond, "we will take it into consideration."

45.     Other cashiers did receive U-Scan training.

46.     On or about October 22, 2007, Byron was informed that he was indefinitely suspended from A&P because of the aforementioned coupon lady incident and he learned that

-7-

6806213v.1

A&P wanted to fire him.  In light of this news, Byron telephoned an A&P union representative about his situation, and the representative set up a meeting on or about October 24, 2007 between A&P and Byron, in effort to mediate the situation.

47.    Some time between October 22, 2007 and October 24, 2007, Byron learned that A&P terminated him from employment.  The stated reason by A&P for its termination of Byron related to the alleged "coupon conspiracy."

48.    During said October 24, 2007 meeting (the "meeting"), A&P, Bincoletto, Alibrando, and/or John Does 1-5 stated that they did not want to mediate the situation and that Byron could not, under any circumstance, get his job back at the A&P, regardless of the fact that any alleged wrongdoing by Byron regarding the alleged "coupon conspiracy" was unintentional.

49.    During the interrogation and/or meeting, Bincoletto laughed and/or scoffed at Byron's speech and the fact that Byron did not understand the alleged legal consequences of Byron's actions.

50.    During the interrogation and/or meeting, Bincoletto and/or Alibrando insinuated that the coupon lady had gone to Byron's cashier with the coupons because she thought Byron was mentally deficient.

51.    During the interrogation and/or meeting, Bincoletto and/or Alibrando repeatedly asked Byron whether he was related to the coupon lady.  Said question was attributable to Byron's race and/or color because both Byron and the coupon lady are African-American.

52.    Prior to his termination, Byron had a clean employment record and had never received any verbal or written warnings with respect to coupon redemption.

-8-

53.     Upon information and belief, other A&P cashiers had made similar errors to that of Byron regarding redemption of the coupons and/or the U-Scan machine, but were not fired for their errors.

**EEOC Complaint:**

54.     Subsequent to his termination, Byron filed a complaint with the EEOC for race and disability discrimination.

55.     Plaintiff Kevin assisted Byron in the process relating to his EEOC complaint.

56.     At the EEOC hearing, A&P claimed that Byron was terminated for cause because of the coupon lady incident.

57.     The EEOC issued Byron a "right to sue" letter on April 9, 2010, and Byron received this letter on or about April 16, 2010.

**Retaliation Against and Unlawful Detainment of Kevin Huart:**

58.     A few days after the EEOC issued the "right to sue" letter, Kevin Huart entered the A&P to shop for groceries.

59.     During said visit, Alibrando approached Kevin at the check-out line and insisted that A&P search Kevin's bagged groceries and compare those items with his purchase receipt.

60.     An A&P employee searched Kevin's bag, discovered that it did not contain any stolen merchandise, and released Kevin from detainment.

61.     The aforementioned confrontation and search and detainment of Kevin occurred within plain view of all of the other customers and cashiers within the store, including Kevin's friend.

62.     Kevin was the only African-American individual in the store at that time.

63.     Kevin filed a formal complaint with A&P regarding the aforementioned incident.

-9-

64.     Kevin telephoned A&P on multiple occasions to follow-up on his complaint, but A&P never notified him of its outcome and never returned his telephone calls.

65.     As a result of the aforementioned confrontation, search and detainment, Kevin was severely humiliated and suffered from a loss of self-esteem.  He feels extremely self-conscious about returning to the store and no longer visits the store, despite the fact that he had considered it his neighborhood store and had shopped there for over twelve years.

66.     The conduct and/or omissions by defendants described in the preceding paragraphs deprived plaintiffs of their federal and civil rights, and violated federal and state discrimination laws, such as, but not limited to:  New Jersey Law Against Discrimination; Title VII of the Civil Rights Act of 1964; the Americans With Disabilities Act; and/or Section 1981, the Civil Rights Act of 1866.

67.     The conduct and/or omissions described by defendants in the preceding paragraphs was intentional, malicious, and/or wanton and willful, and was designed to deprive plaintiffs of their civil rights and rights guaranteed under the laws against discrimination, thereby entitling plaintiffs to an award of exemplary damages.

## COUNT I
### Wrongful Termination
### (A&P, Bincoletto, Alibrando, and/or John Does 1-5)

68.     Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

69.     During plaintiff's 1.5 years of employment as a cashier at A&P, plaintiff Byron satisfied the requisite skill, experience, education and other job-related requirements of his position. He performed his essential job functions, performed his job in a satisfactory manner,

-10-

and/or his disability did not reasonably preclude him from performance of his particular employment.

70.     Alternatively, plaintiff Byron was qualified to perform essential job functions except for limitations caused by his disability, but he could perform said functions with reasonable accommodations.

71.     Defendants A&P, Alibrando, Bincoletto, and/or John Does 1-5 wrongfully terminated plaintiff Byron because of his race, color, disability, and/or request for accommodation.

72.     Defendants treated other employees who were not members of the protected class(es) more favorably.

73.     Such discharge violates Byron's civil rights and constitutes unlawful discrimination and/or an unlawful employment practice in violation of both federal and state discrimination laws.

74.     As a direct and proximate result of defendants' conduct, plaintiff Byron has been deprived of economic and noneconomic benefits including, but not limited to, lost wages, pain and suffering, mental anguish, humiliation, embarrassment, and loss of self-esteem.

WHEREFORE, plaintiff demands judgment against defendants for:

        (a)  exemplary damages,

        (b)  compensatory damages, including, but not limited to, pain and suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;

        (c)  back and front pay;

        (d)  interest, costs, and attorney's fees;

        (e)  reinstatement to plaintiff's former position;

-11-

6806213v.1

(f)  a prohibition against any future discriminatory conduct;

(g)  any other relief deemed equitable by the Court.

## COUNT II
### Hostile Work Environment
**(A&P, Bincoletto, Alibrando, John Does 1-15, XYZ Corporations 1-5)**

75.    Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

76.    Defendants A&P, Alibrando, Bincoletto, John Does 1-15, and XYZ Corporations 1-5 subjected Byron to unwelcome harassment, discriminatory conduct, and/or discriminatory practices when they and other A&P employees, inter alia, intentionally and/or knowingly: mocked, ridiculed, threatened and/or criticized plaintiff Byron; made offensive and condescending comments relating to Byron's race, color and/or disability; refused to provide training to Byron, despite plaintiff Byron's repeated requests; wrongfully interrogated Byron; and required Byron to perform work tasks not otherwise required of persons in his position.

77.    Defendants' conduct was motivated by plaintiff Byron's race, color, disability and/or request for accommodation.

78.    Such conduct was severe or pervasive enough to make a reasonable employee believe that the conditions, terms and/or privileges of employment were altered and the working environment was hostile or abusive.

79.    Byron believed his work environment to be hostile or abusive as a result of defendants' conduct.

80.    As a result of the hostile work environment, Byron suffered one or more adverse tangible employment actions, such as firing and/or failing to promote.

-12-

6806213v.1

81.     Such conduct detrimentally affected plaintiff Byron by, inter alia, causing him to him to withdraw from enrollment in school and suffer severe emotional distress.

82.     Such conduct would detrimentally affect a reasonable person of the same race, color, and/or disability in Byron's position.

83.     Defendants treated other employees who were not members of the protected class(es) more favorably.

84.     Defendants A&P and Great Atlantic knew or should have known about said conduct and failed to take prompt, remedial action.

85.     For the aforementioned reasons, defendants' conduct created a hostile work environment for plaintiff Byron, in violation of Byron's federal and state civil rights, and federal and state laws against discrimination.

WHEREFORE, plaintiffs demand judgment against defendants for:

> (a)  exemplary damages,
>
> (b)  compensatory damages, including, but not limited to, pain and suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;
>
> (c)  back and front pay;
>
> (d)  interest, costs, and attorney's fees;
>
> (e)  reinstatement to plaintiff's former position and prohibition against any future discriminatory conduct;
>
> (f)  any other relief deemed equitable by the Court.

## COUNT III
### Discriminatory Failure to Promote
### (A&P, Bincoletto, Alibrando, and/or John Does 1-5)

86.     Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

-13-

6806213v.1

87.     Approximately one week prior to his termination, plaintiff Byron applied for an assistant managerial position at A&P.

88.     Plaintiff Byron satisfied the requisite skill, experience, education and other job-related requirements of the position, and was qualified and capable of performing the essential job functions of said position with or without reasonable accommodation.

89.     Defendants A&P, Alibrando, Bincoletto, and John Does 1-5 did not hire and promote plaintiff Byron to said position because of his race, color, disability, and/or request for accommodation.

90.     Defendants' failure to promote plaintiff Byron because of his race, color and/or disability violates Byron's state and federal civil rights, and state and federal laws against discrimination.

WHEREFORE, plaintiffs demand judgment against defendants for:

> (a) exemplary damages,
>
> (b) compensatory damages, including, but not limited to, pain and suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;
>
> (c) back and front pay;
>
> (d) interest, costs, and attorney's fees;
>
> (e) reinstatement to plaintiff's former position;
>
> (f) a prohibition against any future discriminatory conduct;
>
> (g) any other relief deemed equitable by the Court.

-14-

## COUNT IV
### Aiding and Abetting
### (A&P, Bincoletto, Alibrando, John Does 1-15, XYZ Corporations 1-5)

91.     Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

92.     Defendants A&P, Bincoletto, Alibrando, John Does 1-15, XYZ, and Corporations 1-5 knowingly, actively and/or purposefully aided, abetted, incited, compelled and/or coerced the discriminatory acts and/or omissions alleged in this Complaint.

93.     As a direct and proximate result of defendants' conduct, plaintiff Byron has been deprived of economic and noneconomic benefits including, but not limited to, lost wages, pain and suffering, mental anguish, humiliation, embarrassment, and loss of self-esteem.

94.     Said conduct by defendants violates Byron's state and federal civil rights, and state and federal laws against discrimination.

WHEREFORE, plaintiff demands judgment against defendants for

> (a)  exemplary damages,
>
> (b)  compensatory damages, including, but not limited to, pain and suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;
>
> (c)  back and front pay;
>
> (d)  interest, costs, and attorney's fees;
>
> (e)  reinstatement to plaintiff's former position and a prohibition against any future discriminatory conduct;
>
> (f)  any other relief deemed equitable by the Court.

6806213v.1

COUNT V
Retaliation
(A&P, Alibrando, Bincoletto, and John Does 1-15)

95.    Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

96.    Plaintiff Kevin filed a complaint with the EEOC for discrimination on behalf of his son Byron.

97.    Defendants knew that plaintiff Kevin filed such complaint on behalf of Byron and, as a result, unlawfully retaliated against Kevin by detaining him and searching his groceries.

98.    Said conduct detrimentally harmed Kevin by, inter alia, causing him severe emotional distress, embarrassment, loss of self-esteem, and feelings of degradation.

99.    Said conduct by defendants constitutes impermissible coercion, intimidation, threats, and/or interference with:  (1) plaintiffs in the exercise or enjoyment of any right granted or protected by law; and/or (2)  plaintiff Kevin on account of his having aided or encourage plaintiff Byron in the exercise or enjoyment of his right(s) granted or protected by law.

100.    For said reasons, defendants have violated plaintiffs' state and federal civil rights, and federal and state laws against discrimination.

WHEREFORE, plaintiffs demand judgment against defendants for:

> (a)  exemplary damages;
>
> (b)  compensatory damages, including, but not limited to, pain and suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;
>
> (c)  interest, costs, and attorney's fees;
>
> (d)  any other relief deemed equitable by the Court.

6806213v.1

## COUNT VI
### False Imprisonment
#### (A&P, Bincoletto, Alibrando, John Does 1-15, XYZ Corporations 1-5)

101.    Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

102.    On or about October 22, 2007, defendants Bincoletto, Alibrando, John Does 1-15, and/or XYZ Corporations 1-5 intentionally confined plaintiff Byron in the A&P when they detained him and interrogated him about the alleged coupon conspiracy.

103.    Plaintiff Byron was conscious and/or harmed by said confinement.

104.    Defendants had no probable cause for believing that plaintiff Byron had willfully redeemed invalid coupons in effort to steal money from A&P.

105.    Defendants did not detain plaintiff Byron in a reasonable manner and/or for a reasonable time.

106.    On or about April 24, 2010, defendants Bincoletto, Alibrando, John Does 1-15, and/or XYZ Corporations 1-5, intentionally confined plaintiff Kevin in the A&P when they detained him and searched his groceries, as described in the aforementioned paragraphs of this Complaint.

107.    Plaintiff Kevin was conscious and/or harmed by said confinement.

108.    Defendants had no probable cause for believing that plaintiff Kevin had willfully concealed unpurchased merchandise.

109.    Defendants did not detain plaintiff Kevin in a reasonable manner and/or for a reasonable time.

110.    For the aforementioned reasons, defendants falsely imprisoned plaintiffs and therefore are liable for damages sustained by plaintiffs.

-17-

6806213v.1

WHEREFORE, plaintiffs demand judgment against defendants for compensatory damages, exemplary damages, plus interest, costs, and attorney's fees and any other relief deemed equitable by the court.

## COUNT VII
### Unlawful Discrimination Against Kevin Huart
### (A&P, Bincoletto, Alibrando, John Does 1-15, XYZ Corporations 1-5)

111.    Plaintiffs incorporate by reference the aforementioned paragraphs as though the same were fully set forth at length herein.

112.    Defendants A&P, Alibrando, Bincoletto, John Does 1-15, and/or XYZ Corporations 1-5 constitute persons and/or owners, lessees, proprietors, managers, superintendents, agents, or employees of a place of public accommodation.

113.    Defendants confronted, detained and searched Kevin because of his race and/or color and/or because he is the father of Byron, an individual who has or is regarded as having, a disability.

114.    As a result of said conduct, defendants directly or indirectly refused, withheld from or denied Kevin the accommodations, advantages, services, facilities or privileges thereof, and/or discriminated against Kevin in the furnishing thereof, on account of Kevin's race, color and/or relationship to Byron, an individual with or regarded as having a disability.

115.    Such conduct detrimentally harmed Kevin by, inter alia, embarrassing him, causing loss of self-esteem, and discouraging him from returning to the store.

116.    Said conduct violated Kevin's state and federal civil rights, and state and federal laws against discrimination.

WHEREFORE, plaintiffs demand judgment against defendants for:

(a) exemplary damages;

-18-

(b) compensatory damages, including, but not limited to, pain and suffering, inconvenience, mental anguish, and/or loss of enjoyment of life;

(c) plus interest, costs, and attorney's fees; and

(d) any other relief deemed equitable by the court.


## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury as to all issues herein presented.

## DESIGNATION OF TRIAL COUNSEL

Robert G. Devine, Esquire is hereby designated as trial counsel for Plaintiffs.

## RULE 4:5-1 CERTIFICATION

Plaintiffs hereby certify, by and through counsel, that based upon their knowledge and the information available to them at this time, the matter in controversy herein is not the subject of any other action nor of any pending arbitration proceeding in New Jersey. There are, to the best of their knowledge, information and belief, no other persons who should be joined in this matter.

WHITE AND WILLIAMS LLP
Attorneys for Plaintiffs,
Byron and Kevin Huart

BY: _____
Robert G. Devine
Katrina D. Gibson

Dated: 10-7-10

-19-

6806213v.1

# EXHIBIT B

EEOC FORM 31 (5/01)

## U.S. Equal Employment Opportunity Commission

Ms. Sheryl Marin
Senior Counsel
THE GREAT ATLANTIC & PACIFIC TEA CO
2 Paragon Drive
Montville, NJ 07045

| PERSON FILING CHARGE |
| --- |
| **Byron Huart** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**524-2008-00150**

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act        [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act        [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by _____ a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by _____ to _____ If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Amparo Soto,**
**Intake Supervisor**

*EEOC Representative*

Telephone   **(973) 645-6016**

**Newark Area Office**
**1 Newark Center**
**21st Floor**
**Newark, NJ 07102**

Enclosure(s): [ ] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

ISSUES: Discharge  Unperfected charge received on 11/14/07-FORMAL CHARGE OF DISCRIMINATION WILL FOLLOW AT A LATER DATE

DATE(S) (on or about):   EARLIEST: 10-22-2007   LATEST: 10-22-2007

| Date | Name / Title of Authorized Official | Signature |
| --- | --- | --- |
| **December 10, 2007** | **Corrado Gigante,** **Director** | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 524-2008-00150 |

| New Jersey Division On Civil Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Byron Huart** | **(862) 215-4705** | **03-28-1988** |

| Street Address | City, State and ZIP Code |
|---|---|
| **77 Orange Road #81, Montclair, NJ 07042** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **A&P SUPERMARKET** | **Unknown** | **(973) 746-3235** |

| Street Address | City, State and ZIP Code |
|---|---|
| **510 Valley Road,  Montclair, NJ** | |

*Headquarters: 2 Paragon Drive, Montvale NJ 07645*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **10-22-2007** | **10-22-2007** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was first hired by the above named employer sometime in or about April 2006. My most recent position was that of a Cashier.

I have been subjected to acts of discrimination due to my race (Black). On various occasions the store managers would make fun of me and do in appropriate gestures behind my back. I was ridiculed and embarrassed in many instances.  I was accused of theft and associated with a suspected customer who this employer believed was stealing only because we both had the same race.  I was ultimately terminated.

Given the above I believe I have been discriminated against due to my race and disability in violation of Title VII of the Civil Rights Act of 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| _____ Date     _____ Charging Party Signature | 12/26/07     LESLIE T. MOORE NOTARY PUBLIC OF NEW JERSEY Commission Expires 8/11/2011 |

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| **Ms. Sheryl Marin**<br>**Senior Counsel**<br>**THE GREAT ATLANTIC & PACIFIC TEA CO**<br>**2 Paragon Drive**<br>**Montville, NJ 07045** | **Byron Huart** |
| | THIS PERSON *(check one or both)* |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**524-2008-00150** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **04-FEB-08** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **14-JAN-08**
   to **Cinnamon Baldwin, Program Assistant, at (973) 645-2302**
   If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

| **Corrado Gigante,**<br>**Area Office Director** | **Newark Area Office** |
|---|---|
| *EEOC Representative* | **1 Newark Center** |
| *Telephone* **(973) 645-5978** | **21st Floor**<br>**Newark, NJ 07102** |

Enclosure(s): [X] Copy of Charge

---

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **January 3, 2008** | **Corrado Gigante,**<br>**Director** | *[signature]* |